**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTONIO FELICIANO,<br><br>  Plaintiff,<br><br>  v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>  Defendant. | Case No. 1:20-cv-01627-SAB<br><br>ORDER GRANTING PLAINTIFF'S SOCIAL SECURITY APPEAL AND REMANDING ACTION TO COMMISSIONER FOR FURTHER PROCEEDINGS<br><br>(ECF Nos. 20, 21, 22) |

**I.**

**INTRODUCTION**

Plaintiff Antonio Feliciano ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for Social Security disability benefits pursuant to Title II of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted without oral argument, to Magistrate Judge Stanley A. Boone.[1] For the reasons set forth below, Plaintiff's appeal shall be granted, and the action shall be remanded to the Commissioner for further proceedings.

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge and this action has been assigned to Magistrate Judge Stanley A. Boone for all purposes. (ECF Nos. 10, 11, 23.)

# II.

# BACKGROUND[2]

On June 16, 2017, Plaintiff filed an application for Social Security benefits under Title II, alleging disability beginning April 24, 2017. (Admin. Rec. ("AR") 196–99,[3] ECF No. 19-1.) Plaintiff's claim was initially denied on October 24, 2017, and denied upon reconsideration on June 6, 2018. (AR 82–94, 111–15.) On March 16, 2020, Plaintiff appeared before Administrative Law Judge Matthew C. Kawalek (the "ALJ"), via videoconference, for an administrative hearing. (AR 33–81.) On April 9, 2020, the ALJ issued a decision denying benefits. (AR 12–32.) On September 21, 2020, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (AR 1–6.)

Plaintiff initiated this action in federal court on November 16, 2020, and seeks judicial review of the denial of his application for disability benefits. (ECF No. 1.) The Commissioner lodged the operative administrative record on January 7, 2022. (ECF No. 19.) On January 14, 2022, Plaintiff filed an opening brief. (ECF No. 20.) On February 14, 2022, Defendant filed a brief in opposition. (ECF No. 21.) On February 16, 2022, Plaintiff filed a reply. (ECF No. 22.)

# III.

# LEGAL STANDARD

**A.    The Disability Standard**

To qualify for disability insurance benefits under the Social Security Act, the claimant must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[4] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."

---

[2] For ease of reference, the Court will refer to the administrative record by the pagination provided by the Commissioner and as referred to by the parties, and not the ECF pagination. However, the Court will refer to the parties' briefings by their ECF pagination.

[3] While the application date indicated in the ALJ's decision and the parties' briefing is March 31, 2017, the Court notes the disability application contained in the administrative record states Plaintiff completed his application for social security benefits on June 16, 2017. This latter date appears to make more sense in light of Plaintiff's alleged onset of disability date of April 24, 2017, and the Court shall refer to the date in the record herein.

[4] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3).

42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five-step sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. § 404.1520; Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006). The burden of proof is on the claimant at steps one through four. Ford v. Saul, 950 F.3d 1141, 1148 (9th Cir. 2020). A claimant establishes a *prima facie* case of qualifying disability once he has carried the burden of proof from step one through step four.

Before making the step four determination, the ALJ first must determine the claimant's RFC. 20 C.F.R. § 416.920(e); Nowden v. Berryhill, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018). The RFC is "the most [one] can still do despite [his] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC must consider all of the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96–8p.

A determination of residual functional capacity is not a medical opinion, but a legal

decision that is expressly reserved for the Commissioner. See 20 C.F.R. §§ 404.1527(d)(2) (RFC is not a medical opinion), 404.1546(c) (identifying the ALJ as responsible for determining RFC). "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001).

At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform given his or her RFC, age, education, and work experience. 20 C.F.R. § 416.912(g); Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006). To do this, the ALJ can use either the Medical Vocational Guidelines ("grids"), or call a vocational expert ("VE"). See 20 C.F.R. § 404 Subpt. P, App. 2; Lounsburry, 468 F.3d at 1114; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). "Throughout the five-step evaluation, the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.' " Ford, 950 F.3d at 1149 (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)).

### B.     Standard of Review

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In determining whether to reverse an ALJ's decision, the Court reviews only those issues raised by the party challenging the decision. See Lewis v. Apfel, 236 F.3d 503, 517 n.13 (9th Cir. 2001). Further, the Court's review of the Commissioner's decision is a limited one; the Court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. 405(g); Biestek v. Berryhill, 139 S. Ct. 1148, 1153 (2019). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart (Thomas), 278 F.3d 947, 954 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)); see also Dickinson v. Zurko, 527 U.S. 150, 153 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard). "[T]he threshold for such evidentiary sufficiency is not high." Biestek, 139 S. Ct. at 1154. Rather, "[s]ubstantial evidence means more than a scintilla, but less than a preponderance; it is an extremely deferential standard." Thomas v.

CalPortland Co., 993 F.3d 1204, 1208 (9th Cir. 2021) (internal quotations and citations omitted); see also Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996). Even if the ALJ has erred, the Court may not reverse the ALJ's decision where the error is harmless. Stout, 454 F.3d at 1055–56. Moreover, the burden of showing that an error is not harmless "normally falls upon the party attacking the agency's determination." Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

Finally, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill v. Astrue, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). However, it is not this Court's function to second guess the ALJ's conclusions and substitute the Court's judgment for the ALJ's; rather, if the evidence "is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." Ford, 950 F.3d at 1154 (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)).

## IV.

## DISCUSSION AND ANALYSIS

Plaintiff raises the following issues on appeal: (1) the ALJ erred in assessing the medical opinion evidence; and (2) the ALJ failed to properly consider Plaintiff's Veterans Affairs ("VA") disability.[5] (ECF No. 20 at 3–8.) The Court will address Plaintiff's purely legal VA argument first, then turn to Plaintiff's substantive argument regarding the medical opinion evidence.

### A.   Whether the ALJ Erred in Rejecting Plaintiff's Prior VA Decisions

From the VA, Plaintiff has been deemed 40% disabled due to herniated discs in his lower back and was prescribed a cane for ambulation and balance. Plaintiff is also 20% disabled due to bilateral knee impairments, for which he wears a knee brace for flare ups. Plaintiff has also been found 10% disabled due to bilateral tinnitus and suffers from hearing loss. Finally, Plaintiff has a 10% impairment from the VA due to a liver condition which was caused by a prior nail fungus medication Plaintiff was prescribed while on active duty. Plaintiff developed all of the

---

[5] As Defendant correctly observes, Plaintiff does not raise any issues with respect to the ALJ's discounting of Plaintiff's testimony, nor does Plaintiff contest the ALJ's determination as it related to Plaintiff's physical impairments. Accordingly, the Court only considers the issues presently before it, and any issues not raised on appeal are deemed waived. Lewis, 236 F.3d at 517 n.13.

aforementioned disabilities while on active duty. (See ECF No. 19 at 3; see also AR 502–03 (VA list of rated disabilities as of Jan. 24, 2017, determining that Plaintiff was: 40% disabled for degenerative arthritis of the spine; 10% disabled for limited flexion of knee; 10% disabled for tinnitus; 10% disabled for hiatal hernia; 10% disabled for eczema; and 10% disabled for paralysis of sciatic nerve); AR 411–12 (VA list of rated disabilities as of Jul. 17, 2017 (same)); AR 461–62 (VA list of rated disabilities as of Dec. 28, 2018 (same)).)

In his decision, the ALJ noted Plaintiff's VA disability ratings contained in the record. However, beyond this acknowledgment, the only statement the ALJ makes regarding those ratings is

> These ratings are based upon regulations set forth by Veterans Affairs and not completed pursuant to Social Security program rules and regulations. As such, these ratings are neither valuable nor persuasive in accordance with 20 CFR 4040.1504.

(AR 26.)

Plaintiff submits a VA determination of disability is ordinary entitled to "great weight" and an ALJ may only give less weight to a VA disability rating if he gives persuasive, specific, valid reasons for doing so that are supported by the record. Plaintiff argues the ALJ failed to provide any reason for refusing to consider the multiple VA ratings supporting Plaintiff's allegations, except to say they are inapplicable and thus neither valuable nor persuasive, and therefore erred in discounting the VA determinations. (ECF No. 20 at 7–8.) Defendant argues the standard articulated by Plaintiff no longer applies, following enactment of the 2017 regulations, and instead the ALJ was not required to discuss other governmental agency decisions. (ECF No. 21 at 13–14.)

With respect to an ALJ's consideration of prior VA determinations, the Ninth Circuit has provided that

> [T]he ALJ must consider the VA's finding in reaching his decision and the ALJ must ordinarily give great weight to a VA determination of disability . . . We have found great weight to be ordinarily warranted because of the marked similarity between these two federal disability programs. However, a VA rating is not conclusive and does not necessarily compel the SSA to reach an identical result. An ALJ may give less weight to a VA rating if he

> gives persuasive, specific, valid reasons for doing so that are supported by the record.

Luther v. Berryhill, 891 F.3d 872, 876–77 (9th Cir. 2018) (quoting Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 695 (9th Cir. 2009); McLeod v. Astrue, 640 F.3d 881, 886 (9th Cir. 2011); and McCartey v. Massanari, 298 F.3d 1072, 1076 (9th Cir. 2002)) (internal quotations omitted).

However, as Defendant correctly notes, the new regulations effective March 27, 2017, which apply to Plaintiff's June 16, 2017 application, alter this standard. As relevant here, 20 C.F.R. § 404.1504 provides:

> Other governmental agencies and nongovernmental entities—such as the Department of Veterans Affairs, . . . — make disability, blindness, employability, Medicaid, workers' compensation, and other benefits decisions for their own programs using their own rules. Because a decision by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits is based on its rules, it is not binding on us and is not our decision about whether you are disabled or blind under our rules. Therefore, in claims filed (see § 404.614) on or after March 27, 2017, we will not provide any analysis in our determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits. However, we will consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision that we receive as evidence in your claim in accordance with § 404.1513(a)(1) through (4).

20 C.F.R. § 404.1504.

The Ninth Circuit has not yet addressed the effect of the new regulations on its standard as originally set forth under Valentine, and it remains to be seen whether the new regulations will meaningfully change how the Ninth Circuit determines the adequacy of an ALJ's reasoning and whether the Ninth Circuit will continue to require that an ALJ provide "persuasive, specific, valid reasons" in the analysis of VA determinations, or some variation of those standards. Meanwhile, this Court must defer to the new regulations pertaining to decisions by other governmental agencies, even where they conflict with prior judicial precedent, unless the prior judicial construction "follows from the unambiguous terms of the statute and thus leaves no room for agency discretion." See Allen T. v. Saul, No. EDCV 19-1066-KS, 2020 WL 3510871, at *3

(C.D. Cal. Jun. 29, 2020) (quoting Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs., 545 U.S. 967, 981–82 (2005)).

On this basis and authority, Plaintiff's argument that the ALJ erred in discounting the VA determinations solely because he did not provide "persuasive, specific, valid reasons" reasons for doing so is unavailing. Nonetheless, even under the new regulatory framework (and, in fact, in accordance with it), the Court must still determine whether the ALJ adequately explained how he considered the supportability and consistency factors of the medical opinions and evidence underlying the VA determination, and whether the reasons were free from legal error and supported by substantial evidence. See Martinez V. v. Saul, No. CV 20-5675-KS, 2021 WL 1947238, at *3 (C.D. Cal. May 14, 2021).

Here, Dr. Badesha was Plaintiff's primary care physician at the VA. His treatment notes, along with the notes of other the providers who treated Plaintiff at the VA between May 20, 2016, and February 14, 2020, are included in the administrative record. (See AR 307–420, 431–62, 463–503, 518–721.) Thus, to the extent the ALJ found the opinion of state consulting physician Dr. Afra to be more persuasive than Dr. Badesha's medical opinion (addressed below), the Court shall evaluate the ALJ's reasoning as to how he considered the supportability and consistency of Dr. Badesha's opinion relative to Plaintiff's comprehensive medical record, which includes the ten pages of Dr. Afra's opinion, as well as the thirty-two pages of records from UCLA (where Plaintiff's Mal de Dabarquement Syndrome ("MDS") was treated), and the three hundred and ninety-nine pages of medical records from the VA.

**B.     Whether the ALJ Erred in Assessing the Medical Opinion Evidence**

Plaintiff contends the reasons the ALJ rejected Dr. Badesha's medical source statement are conclusory and provide no real rationale as to why his opinion should not be followed. (ECF No. 20 at 6–7.) Further, Plaintiff argues the consultative examiners' opinions, which the ALJ found persuasive, are inconsistent with the overall record, especially with respect to the severity of Plaintiff's MDS.

1.     <u>Legal Standard</u>

Defendant correctly notes that claims filed after March 27, 2017, as here, are subject to

the revised Social Security Administration regulations. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 FR 5844-01, 2017 WL 168819 (Jan. 18, 2017); 20 C.F.R. § 404.1520c. Under the updated regulations, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Thus, the new regulations require an ALJ to apply the same factors to all medical sources when considering medical opinions. See id. Further, the regulations governing claims filed on or after March 27, 2017, no longer mandate particularized procedures that the ALJ must follow in considering opinions from treating sources (e.g., requirement that ALJ must 'give good reasons' for the weight given a treating source opinion; specifically, "clear and convincing reasons" for rejecting a treating or examining physician's uncontradicted medical opinion, and "specific and legitimate reasons" for rejecting a contradicted opinion, supported by substantial evidence in the record). See 20 C.F.R. § 404.1520c(b) (the ALJ "is not required to articulate how [he] considered each medical opinion or prior administrative medical finding from one medical source individually."); Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017).

Instead, "[w]hen a medical source provides one or more medical opinions or prior administrative medical findings, [the ALJ] will consider those medical opinions or prior administrative medical findings from that medical source together using" the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; [and] (5) other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. §§ 404.1520c(a), (c)(1)–(5). The most important factors to be applied in evaluating the persuasiveness of medical opinions and prior administrative medical findings are supportability and consistency. 20 C.F.R. §§ 404.1520c(a), (b)(2).[6] Accordingly, the ALJ must explain in his decision how persuasive he finds a medical opinion and/or a prior administrative

---

[6] Regarding the supportability factor, the regulation provides that the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), the more persuasive the medical opinions . . . will be." § 404.1520c(c)(1). Regarding the consistency factor, the "more consistent a medical opinion(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." § 404.1520c(c)(2).

medical finding based on these two factors. 20 C.F.R. § 404.1520c(b)(2). However, the ALJ "may, but [is] not required to, explain how [he] considered the [other remaining factors]," except when deciding among differing yet equally persuasive opinions or findings on the same issue. 20 C.F.R. § 404.1520c(b)(2)–(3). Further, the ALJ is "not required to articulate how [he] considered evidence from nonmedical sources." 20 C.F.R. § 404.1520c(d).

While, at times, Plaintiff appears to reference the old "specific and legitimate reasons" standard in his arguments that the ALJ erred in not finding the opinion of his treating physician of twenty-six years more persuasive than that of a one-time consulting physician, he nevertheless acknowledges the supportability and consistency standard is applicable here and maintains that, under such analysis, the ALJ still improperly discounted Dr. Badesha's opinion. Regardless, the Court finds Plaintiff's arguments, even to the extent they sound in "treating source rule," are still capable of analysis under the new regulations.[7] Accordingly, the Court will address the ALJ's evaluation of any differing medical opinions under the 2017 regulations.

2. Relevant Evidence

**a. The ALJ's Decision**

The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. §§ 404.1520, 416.920. (AR 17–27.) At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since April 24, 2017, the alleged disability onset date. (AR 17.) At step two, the ALJ found Plaintiff had the severe impairments of mild degenerative disc disease of the thoracic spine, mild facet arthropathy and degenerative disc disease of the cervical spine, sciatic nerve

---

[7] "Although the regulations eliminate the 'physician hierarchy,' deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still 'articulate how [he] considered the medical opinions' and 'how persuasive [he] find[s] all of the medical opinions." P.H. v. Saul, No. 19-cv-04800-VKD, 2021 WL 965330, at *3 (N.D. Cal. Mar. 15, 2021). As always, the ALJ's reasoning must be free of legal error and supported by substantial evidence. See Ford, 950 F.3d at 1154. Indeed, the Court notes that, where an ALJ's rationale for rejecting a contradicted treating physician's opinion satisfies the new regulatory standard, it would almost certainly pass scrutiny under the old standard as well. See Andrews, 53 F.3d at 1041 (noting that inconsistency with independent clinical findings in the record is a specific and legitimate reason to reject a contradicted opinion of a treating physician). Thus, even under the new regulatory framework, the Court must still determine whether the ALJ adequately explained how he considered the supportability and consistency factors relative to medical opinions and whether the reasons were free from legal error and supported by substantial evidence. See Martinez V., 2021 WL 1947238, at *3; see also Allen T., 2020 WL 3510871, at *3 ("It remains to be seen whether the new regulations will meaningfully change how the Ninth Circuit determines the adequacy of an ALJ's reasoning and whether the Ninth Circuit will continue to require that an ALJ provide 'clear and convincing' or 'specific and legitimate reasons' in the analysis of medical opinions, or some variation of those standards.").

paralysis, MDS, inner ear disease with vertigo, type II diabetes with diabetic neuropathy, gout, and obesity. (AR 17 (citing 20 C.F.R. § 416.1520(c)).) The ALJ additionally found Plaintiff had the medically determinable impairments of hypertension, hyperlipidemia, chronic GERD, eosinophilia, erectile disorder, primary osteoarthritis, hyperglycemia, pinguecula, vitamin D deficiency, arcus of the bilateral eyes, and bilateral cataracts, but determined these impairments were non-severe. (AR 18.) The ALJ also found Plaintiff had the medically determinable mental impairments of major depressive disorder, adjustment disorder, and post-traumatic stress disorder ("PTSD"), but determined these impairments, considered singly and in combination, did not cause more than minimal limitation in Plaintiff's ability to perform basic mental work activities and were therefore non-severe. (Id.) The ALJ also noted Plaintiff was "diagnosed" with a number of symptoms — dorsalgia, nausea, microscopic hematuria, dizziness, chronic low back pain, episode of chills, possible TIA, significant psychiatric history, chronic bilateral knee pain, cluster headache with superimposed migraine headache, and chronic dizziness — which the ALJ did not find to be medically-determinable impairments. (AR 20.)

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of the listed impairments in 20 C.F.R. §§ 416.920(d), 416.925, and 416.926. (AR 20.)

Before proceeding to step four, the ALJ determined Plaintiff's RFC permitted him to perform a reduced range of light work as defined in 20 C.F.R. § 416.1567(b) with the following limitations:

> [Plaintiff] can occasionally lift/carry 20 pounds and frequently lift/carry 10 pounds. He can stand and/or walk 4 hours and sit 6 hours of an 8-hour workday, but he must use a cane for ambulation or to traverse uneven surfaces. He can occasionally operate foot controls with the bilateral lower extremities. [Plaintiff] can never climb ladders, ropes, or scaffolds, and he can occasionally balance, stoop, kneel, crouch, crawl, or climb ramps and stairs. He can tolerate no exposure to hazards.

(AR 22.)

At step four, the ALJ found Plaintiff was capable of performing past relevant work as an eligibility worker, as this work did not require the performance of work-related activities

precluded by Plaintiff's RFC. (AR 27 (citing 20 C.F.R. § 404.1565).) Therefore, the ALJ found Plaintiff was not under a disability at any time since April 24, 2017. (AR 27.)

### b. Treating Physician Dr. Badesha's Medical Source Statement

On February 14, 2020, Dr. Badesha opined Plaintiff had a marked limitation in dealing with work stress; could sit for one hour at a time, then would need to walk for fifteen minutes; needed to elevate both legs while sitting; could sit for a total of four hours per eight-hour workday, not including periods of walking about; could stand/walk for one hour before needing to sit in a working position for thirty minutes; could stand/walk two hours total in an eight-hour workday; and would need additional rest periods totaling two hours; needed to use a cane on all surfaces and terrains for all ambulation as well as standing; and would be absent more than three times per month. (AR 723–28.) Thus, Dr. Badesha opined Plaintiff would not be able to work a full eight-hour workday.

The ALJ found this opinion "unpersuasive" because

> Dr. Badesha rendered no opinion with respect to lifting, carrying, balancing, stooping, postures of the neck, or repetitive use of the hands . . . [Dr. Badesha's opinion] is unsupported by any objective findings, and is inconsistent with the overall objective evidence of record, including physical examination findings, testing, and imaging, and instead appears to only be based on the claimant's subjective reporting (Hearing Testimony; 1F-4F; 6F). In addition, Dr. Badesha previously indicated he was unable to complete this form (9F/23).

(AR 25–26.)

### c. Treating Physician Dr. Ishiama

Plaintiff was diagnosed with MDS in 2017. He alleges this is the reason he had to end his employment at the VA. Plaintiff has been treated at the UCLA Medical Center by Dr. Ishiama for his MDS. (AR 285–92, 504–17.) With respect to his MDS, Plaintiff reported he experienced a rocking sensation, rolling sensation, and sensitivity to light 2-3 times per week. He would have no warning before dizziness occurred, but believed it was sensitive to positional changes; when Plaintiff stands up, the dizziness gets worse; when he lies down, it gets better. Dr. Ishiama noted the dizziness and nausea seemed related. Plaintiff's medications for his various conditions include morphine, Vicodin, metformin, glipizide, gabapentin, TID tegratol, three blood pressure

medications, and a cholesterol medication. Plaintiff reported some of the medications he tried for dizziness made him more nauseous; Celexa had no effect; and the scopolamine patch did not work. D. Ishiama observed Plaintiff's gait, with a cane, was wide based. Plaintiff appeared somewhat off-balance when turning, and he had difficulty on toe walk. Plaintiff could stand in the Romberg position with his eyes open but would sway when his eyes were closed. Plaintiff's wife, a nurse of thirty years (see AR 47), observed that Plaintiff "lists to the right."

The ALJ's decision appears to reference Dr. Ishiama's treatment records to note the symptoms Plaintiff reported at that time, some of the medications he was taking, and an unremarkable brain CT scan. (AR 285, 286–87, 290.) It does not appear that any other portion of Dr. Ishiama's treatment records were considered in the ALJ's determination.

### d. Consultative Internal Medicine Physician Dr. Afra's Evaluation

Dr. Afra performed a consultative internal medicine evaluation of Plaintiff in October 2017. (AR 421–30.) Dr. Afra opined Plaintiff could push, pull, lift, and carry twenty pounds occasionally and ten pounds frequently; could walk and/or stand six hours out of an eight-hour day; did not medically require a cane to ambulate; could sit for six hours out of an eight-hour day; could occasionally bend, kneel, stoop, crouch, and crawl; should likely avoid walking on uneven terrain, climb ladders, and work with heights; and had no limitations in hearing, seeing, or use of the hands for fine and gross manipulative movements. (AR 427–28.)

The ALJ found additional limitations in climbing ramps and stairs, operation of food controls, and the required use of an assistive device were warranted, based on "the medical evidence of record, including physical examination findings, as well as the claimant's own reporting related to dizziness, numbness in his feet, and unsteadiness." (AR 26.) Nonetheless, the ALJ still found Dr. Afra's opinion was "generally persuasive" because it was "generally supported by the objective and subjective evidence of record, including weight restrictions, postural limitations, and restrictions in climbing ladders, ropes, and scaffolds and exposure to hazards. (AR 26 (citing, generally, "Hearing Testimony; 1F–4F; 6F" (AR 33–81, 285–430, 463–503)).)

///

**e.     Reviewing State Agency Physicians Dr. Zuniga and Dr. Santiago's Opinions**

Dr. Zuniga issued an opinion October 23, 2017.  (AR 82–93.)  Dr. Santagio issued an opinion on May 3, 2018.  (AR 95–109.)  Both doctors issued essentially the same opinion, that Plaintiff was capable of light duty work with the use of a cane for distance and uneven terrain, could frequently climb ramps and stairs, kneel, crouch, and crawl, could never climb ladders, ropes, or scaffolds, and should avoid even moderate exposure to hazards (AR 89–91, 105–07).  The only difference between the doctors' opinions was that Dr. Zuniga opined Plaintiff could occasionally balance and stoop; whereas Dr. Santiago opined Plaintiff could *frequently* balance and stoop.

The ALJ found both Dr. Zuniga and Dr. Santiago's opinions "only somewhat persuasive" in light of Plaintiff's subjective complaints and the evidence, which supported greater limitations in standing/walking, climbing stairs, kneeling, crouching, and crawling, as well as limitations in the operation of foot controls.  (AR 25 (citing AR 33–81, 285, 290, 293, 295, 298, 300, 304, 317–19, 328–29, 421, 423–26, 476–77).)

3.     <u>Analysis</u>

As demonstrated above, the ALJ rejected Dr. Badesha's medical source statement with respect to the following limitations: the ALJ found Plaintiff could sit for six hours in an eight-hour day, instead of four plus walking breaks; he could stand/walk for four hours in an eight-hour day, instead of two (including additional rest periods after each hour); and a cane was only required to traverse uneven surfaces, as opposed to "all surfaces and terrains for all ambulation as well as standing."  The ALJ also appears to have rejected Dr. Badesha's opinion that Plaintiff needed to be absent from work three days per month, and would need additional rest periods of two hours.  And the ALJ determined Plaintiff could occasionally operate foot controls with the bilateral lower extremities, balance, stoop, kneel, crouch, crawl, and climb ramps and stairs, whereas Dr. Badesha does not appear to have addressed these limitations.

As noted, the ALJ discounted Dr. Badesha's opinion on the bases that: (1) it was unsupported by any objective findings; (2) it was inconsistent with the overall objective evidence of record, including physical examination findings, testing, and imaging; (3) it was only based on

14

Plaintiff's subjective reporting; and (4) Dr. Badesha previously indicated he was unable to complete a medical source statement for Plaintiff.[8]

As an initial matter, the Court notes Plaintiff's argument that the ALJ's reasons for rejecting Dr. Badesha's medical source statement are conclusory and provide no real rationale as to why his opinion should not be followed is well-taken. As demonstrated by the ALJ's discussion of Dr. Badesha's opinion, which is quoted verbatim *supra*, the ALJ does not identify which portion of the opinion is unsupported by or inconsistent with the record and does not identify which evidence in the record contradicts Dr. Badesha's opinion to support his finding. Instead, the ALJ cites to the entirety of Plaintiff's hearing testimony, without identifying any particular statement/s or contention/s, and entire exhibits "1F–4F; 6F" in the record (*i.e.*, AR 285–430, 463–503) — again, with no further explanation of what findings within those nearly two hundred pages of records purportedly supported or did not support Dr. Badesha's opinion, thus impermissibly forcing this Court to speculate as to the ALJ's reasoning. The Court cannot find the ALJ's reasoning is supported by substantial evidence where it unclear what evidence the ALJ is relying upon.

Furthermore, the ALJ's finding that Dr. Badesha's opinion is unsupported by any objective findings and is only supported by Plaintiff's subjective reporting appears significantly contradicted by the hundreds of pages of treatment notes in the medical records from Dr. Badesha's treatment of Plaintiff since 1999 at the VA (see ECF No. 20 at 4), as well as the concurring medical records from Dr. Ishiama at UCLA (who treated Plaintiff's MDS). (See, generally, AR 307–420, 431–62, 463–503.)

As to the consultant opinion, which the ALJ deemed more persuasive than Dr. Badesha's, Dr. Afra suggests, without expressly stating as much, his belief that Plaintiff was malingering with respect to his chronic dizziness/MDS, "I believe the claimant's presentation today was a bit dramatic . . . He came into the office with the assistance of a cane. . . Please note the claimant was

---

[8] It is unclear to the Court how the ALJ's fourth comment is supportive of his decision, as the ALJ provides no further explanation to support this purported reason for rejecting Dr. Badesha's opinion, and neither party addresses it in their briefings. Consequently, the Court will not address it further, but concludes it does not constitute substantial evidence in support of the ALJ's determination.

asked, as he was walking, to let go of his cane and walk without a cane.  All of a sudden, he could not even take a few steps.  His gait appears to be very difficult and he was about to fall.  I had to catch the claimant . . . So, exaggeration of the symptoms also is noted on this claimant today and psychosomatic element to the claimant's physical presentation is also noted today as well."  (AR 423, 426.)  The remainder of Dr. Afra's comments about Plaintiff's coordination and gait appear to derive from Dr. Afra's perception that Plaintiff was "exaggerating" his symptoms: Dr. Afra notes he had to assist Plaintiff with walking on toes and heels, and that Plaintiff had some difficulty; Romberg was positive, but Dr. Afra again states "I believe [this behavior] was exaggerated as well."  Dr. Afra even expresses skepticism that Plaintiff received a diagnosis of MDS from Dr. Ishiama, stating "I have no documentation of mal de debarquement syndrome . . . This needs to be verified by the State."  At bottom, Dr. Afra ultimately concludes that Plaintiff does not need a cane to ambulate.

The Court notes Plaintiff's performance on the coordination and gait testing with Dr. Afra was consistent with Dr. Ishiama's findings and observations.  It should perhaps also be noted that Dr. Afra, by contrast, is not a specialist in MDS.  Indeed, Dr. Afra notes in his report that after Plaintiff reported he had been diagnosed by Dr. Ishiama at UCLA with mal de debarquement syndrome, "I had to look this diagnosis up myself [on the internet]."  (AR 423.)  The Court also notes Dr. Afra did not appear to have Plaintiff's surgical history, or his "list of allegations" to review prior to the examination; and Dr. Afra's report contains the caveat that his examination "is not meant to be and must not be construed to be a complete physical examination for health purposes."  Nor did Dr. Afra have the benefit of treating Plaintiff on multiple occasions, unlike Dr. Badesha, who consistently treated Plaintiff for over twenty years and did benefit from such observations.  In sum, Dr. Afra's observations are not supported by voluminous records and instances of treatment, but a single appointment, which further appears to have been colored by Dr. Afra's ignorance of mal de debarquement syndrome and, consequently, the presupposition that Plaintiff was exaggerating all of his symptoms.[9]

---

[9] The Court notes the cumulative years of experience Dr. Badesha had treating Plaintiff, and therefore likely the best opportunity of any physician to holistically observe Plaintiff's symptoms and conditions, while not warranting greater weight under the "treating physician rule," still warrant consideration under the last three of the five factors

Yet, Dr. Afra's belief that Plaintiff was exaggerating his MDS symptoms is parroted by every examining state physician and the ALJ as the most compelling piece of medical evidence to support a finding of non-disability for Plaintiff. Such reasoning appears to fly in the face of the Ninth Circuit's directive that both supporting and detracting evidence be considered, rather than isolating a specific quantum of supporting evidence. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985); Ghanim v. Colvin, 763 F.3d 1154, 1164 (9th Cir. 2014) (finding "the ALJ improperly cherry-picked some of [the physician's] characterizations of [the claimant's] rapport and demeanor instead of considering these factors in the context of [the physician's] diagnoses and observations of impairment."); Holohan v. Massanari, 246 F.3d 1195, 1207 (9th Cir. 2001) (ALJ's reason for rejecting medical opinion was not supported by substantial evidence where he selectively relied on some entries and ignored many others that indicated continued, severe impairment).

On this record, the Court does not find the ALJ's reasons for determining Dr. Afra's opinion to be more persuasive than Dr. Badesha's opinion are supported by substantial evidence. This is harmful error warranting remand.

**C.     Remand**

The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the district court. Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000). Except in rare instances, when a court reverses an administrative agency determination, the proper course is to remand to the agency for additional investigation or explanation. Moisa v. Barnhart, 367 F.3d 882, 886 (9th Cir. 2004) (citing INS v. Ventura, 537 U.S. 12, 16 (2002)). Generally, an award of benefits is directed when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

---

identified under the revised 2017 regulations: (3) relationship with the claimant; (4) specialization; and (5) other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. §§ 404.1520c(a), (c)(1)–(5). Further, while an ALJ typically need only discuss the first two factors (supportability and consistency), the regulations nonetheless indicate he should also address the remaining factors when deciding among differing yet equally persuasive opinions or findings on the same issue. Id.

17

Smolen, 80 F.3d at 1292. In addition, an award of benefits is directed where no useful purpose would be served by further administrative proceedings, or where the record is fully developed. Varney v. Sec'y of Health & Human Serv., 859 F.2d 1396, 1399 (9th Cir. 1988).

Here, it is not clear from the record that the ALJ would be required to find Plaintiff disabled if all the evidence were properly evaluated using the proper standards. Therefore, the Court in its discretion finds that remand for further proceedings is appropriate, to hold a new hearing, reconsider the medical opinion evidence of record under the appropriate standards, and issue a new decision.

## V.

## CONCLUSION AND ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Plaintiff's appeal from the decision of the Commissioner of Social Security (ECF No. 20) is GRANTED;
2. The matter is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision; and
3. The Clerk of the Court is DIRECTED to enter judgment in favor of Antonio Feliciano and against Defendant Commissioner of Social Security.

IT IS SO ORDERED.

Dated: **June 8, 2022**

UNITED STATES MAGISTRATE JUDGE